Voorhees v. Reed.

## CHARLES H. VOORHEES

v.

## GEORGE W. REED.

1. PROMISE—CONSIDERATION.—Action, or the refraining from action, by the promisee, if to his own disadvantage, though of no benefit to the promisor, may constitute a sufficient consideration to support the promise.

2. CONSIDERATION INSUFFICIENT.—If the act done or refrained from is forbidden by good morals, or by the common law, or the express provision or general policy of a statute in force, such doing or refraining would not constitute a legal and sufficient consideration for the promise.

3. SAME.—Where certain hogs belonging to appellee were being treated by a doctor, for hog cholera, and appellee told appellant, who accompanied the doctor, that he was afraid the forty in question were going to die and he thought he had better ship them, and appellant said, "You leave the hogs there for the five days and I will give you $25 for every one that dies." *Held,* that if these hogs or any of them were so diseased, and appellee had reasonable ground to suspect it, he was forbidden both by good morals and by the statute to ship them, and in such case his refraining from so doing would not be a sufficient consideration to support appellant's promise.

4. DAMAGES.—If an agreement be unreasonable and unconscionable, but not in such a way or to such a degree as to imply fraud, though courts of law will not declare the contract void, they will give only reasonable damages to the plaintiff who seeks compensation for the breach of it.

APPEAL from the Circuit Court of Jersey county; the Hon. G. W. HERDMAN, Judge, presiding. Opinion filed August 20, 1885.

Messrs. HAMILTON & SLATEN, and Messrs. BROWN & KIRBY, for appellant.

Mr. A. A. GOODRICH and Mr. JAMES R. WARD, for appellee.

PLEASANTS, J. Assumpsit by appellee against appellant, brought before a justice of the peace and appealed to the circuit

court, where plaintiff obtained a verdict for $175 damages, being the full amount claimed. Defendant moved for a new trial upon the grounds, among others, that the verdict was against the law and the evidence and that improper instructions had been given for the plaintiff; but the court overruled the motion and rendered judgment upon the verdict, for the plaintiff, for the damages so assessed and for costs; from which judgment the defendant took this appeal, and here assigns for error the giving of said instructions and the overruling of said motion.

It appears that the parties were old acquaintances residing near Jerseyville, and engaged in farming and in raising, buying and shipping live stock. In December, 1883, hog cholera prevailed in the neighborhood and one Dr. Godfrey was treating for it. He boarded with appellant, who also drove him about and introduced him, for which services he received from the doctor two dollars per day, but had no interest in his contracts or business.

Appellee had on his place 107 hogs, and on Tuesday, the 18th of said month, put up ninety of them for treatment by the doctor, with whom he had made a contract therefor on the day before, for five days, at twenty cents per head. On that morning the doctor, assisted by appellant and the hired man of appellee, separated these hogs into two lots, of fifty and forty respectively, and proceeded with his treatment. Appellee testifies that on the morning of Thursday, the 20th day of the month and the third of the treatment, he told appellant that he believed he had better ship the lot of forty—that he was afraid they would die; that appellant thereupon said to him "you leave the hogs there for the five days and I will give you $25 for every one that dies" to which he replied, "they can remain there for the five days if that is your guaranty," and appellant said "all right;" that he did leave them there and continued to care for them, feeding his own oats and corn until the following Monday, when he shipped all of those surviving that he considered fit; that seven had died in the meantime—one on Thursday night, one on Friday, two on Saturday, and three on Sunday night; that

they averaged about two hundred pounds in weight and were worth $5.50 per hundred.

It was on this alleged promise that the suit was brought and for these seven hogs that the recovery was had.

Appellee's two hired men corroborated him as to the prom_ise, but appellant positively denied it, and we see no way of reconciling the conflict except by the supposition, which finds some warrant in reason and the circumstances, that he used the language, in substance, attributed to him, but somewhat thoughtlessly, as only a mode of expressing his confidence in the skill and success of the doctor, and therefore did not remember or recognize it when presented as an actual agreement to pay more than double the value of the property upon a contingency not altogether unlikely to happen, and without the possibility of benefit to himself if it should not.

There was also a conflict of testimony as to the condition of the hogs at the time of their separation and at the time of the alleged promise. Appellee's hired man says, "They separated the fat ones from the poor ones, and the sick ones from the well ones," and that "they said the forty were not diseased." Appellant says fifty of them were sick, forty of them seemed better and would eat. Godfrey says, "Not one of them was well." Medicine was given to all, and though appellee speaks of that given to the forty as "preventative," and of that given to the fifty as "curative," no other witness alludes to any such distinction. Only seventeen or eighteen of the thirty-three then surviving were shipped or considered fit for shipment on the 22d. The others all died on the place.

On the part of the plaintiff the court instructed the jury "that the question whether any of the forty hogs were diseased with cholera or not is not involved in this case    *    *    *    and the jury should give to such question no consideration." The consideration for the promise sued on certainly was in question. It was claimed to be the plaintiff's refraining from shipping those hogs when he proposed to ship them. If it was insufficient the verdict was wholly unsupported.

There is no doubt that action or the refraining from action by the promisee, if to his own disadvantage, though of no ben-

efit to the promisor, may constitute a sufficient consideration to support the promise, and will, provided there be no other or further reason preventing it. The instructions given for the plaintiff upon this point (Nos. 1, 4, 6, 7) omitted the qualification which the evidence here required. If the act done or refrained from was forbidden by good morals, or by the common law, or the express provision or general policy of a statute in force, such doing or refraining would not constitute a legal and sufficient consideration for the promise. Munsell v. Temple, 3 Gilm. 96; Henderson v. Palmer, 71 Ill. 579. So also if the promisee was at the time under a legal obligation, independent of the promise—whether imposed by good morals, the common law, the terms or policy of a statute, or a valid and subsisting contract—to do or refrain, as the case might be, such doing or refraining would not suffice to support the promise. One can not enforce an agreement to pay h m for what he is otherwise legally bound or forbidden to do. 1 Parsons on Cont. 437 (5th and 6th Eds.); Hennessey v. Hill, 52 Ill. 281; Callagan v. Hallett, 1 Caines, 104; L'Amoreaux v. Gould, 3 Seld. 349; Smith v. Bartholomew, 1 Metc. 276; Stilk v. Myrick, 2 Campb. 317; Collins v. Godfrey, 1 B. & Ad. 950.

We hold that the putting upon the market of food animals known to be diseased, is forbidden by good morals and by the policy of the statute which declares it criminal to sell or offer to sell or keep for sale the flesh of any such animal. R. S. Ch. 38, § 7. If then these hogs or any of them were so diseased, and appellee had reasonable ground to suspect it, he was thus forbidden to ship them. In that case, therefore, his refraining from so doing would not be a sufficient or valid consideration for a promise to pay him for it, and such promise, if made, would be void.

The instruction quoted withdrew from the consideration of the jury all the evidence touching the fact of disease and of appellee's knowledge of it; for if the fact of disease was not in question his knowledge of that fact could not have been. There was evidence tending to establish both, and the jury should have been allowed to pass upon its effect. We are in-

clined to hold also that in any view the jury might have taken of this evidence the damages assessed were excessive. The agreement, if valid, was unreasonable and unconscionable. According to the testimony of appellee himself the hogs were worth only $77. The promise in the nature of an insurance without any premium therefore, was to pay considerably more than double their value. " If an agreement be unreasonable or unconscionable, but not in such a way or to such a degree as to imply fraud  *  *  *  though courts of law will not declare the contract void they will give only reasonable damages to the plaintiff, who seeks compensation for the breach of it." 1 Parsons on Cont. 437, citing Cutler v. How, 8 Mass. 257; Cutler v. Johnson, Ibid. 266; Baxter v. Wales, 12 Id. 365.

For the error above indicated the judgment of the circuit court will be reversed and the cause remanded.

It is perhaps proper to add, with reference to another trial, that in our opinion several of the instructions given for the defendant were also erroneous. We find in the record no evidence tending to show that Godfrey had undertaken to prevent or cure the disease as to any of the hogs, and therefore see no case for the application of the Statute of Frauds; nor do we find any tending to prove that appellee violated the agreement by shipping on the 24th of December. The " five days " in question extended from the 18th to the 22d, both inclusive. The qualification at the end of No. 4 was wrong, and No. 5 we think inapplicable and based on a misconception of the fact.

Reversed and remanded.