## John Anisfield Co. v. Edward B. Grossman & Co. et al.

1. EQUITY—*Application of the Maxim that He Who Seeks Equity Must Come with Clean Hands.*—The maxim that he who seeks equity must come with clean hands, only applies to the particular transaction under consideration by the court. The wrong must have been done to the defendant himself and must have been in regard to the matter in litigation.

2. MUNICIPAL CORPORATIONS—*Capacity in Which They Hold the Streets and Sidewalks.*—A municipal corporation holds and controls its streets and sidewalks in trust for the general public, without the power

John Anisfield Co. v. Edward B. Grossman & Co.

of converting or appropriating them to private use, and where an ordinance by its terms proposes to impair the public right and use of a part of a street or sidewalk for the sole purpose of enabling a private person or corporation to occupy a part of the street or sidewalk by a permanent structure appurtenant to his or its building abutting upon such street or sidewalk, such ordinance is void.

3. SAME—*Rights of the Occupants of Buildings Abutting upon Streets.*—The occupants of a building abutting upon the sidewalk of a street in the city of Chicago are entitled to have the light and air pass unobstructed across the open space between the surface of the sidewalk and the sky, notwithstanding the passage by the city of an ordinance authorizing a private company to construct and maintain a bay window in connection with its building, extending along the front, and in width a distance of eighteen inches over the sidewalk adjoining such building.

**Bill for an Injunction.**—Appeal from the Circuit Court of Cook County; the Hon. ELBRIDGE HANECY, Judge, presiding. Heard in this court at the October term, 1901. Affirmed. Opinion filed November 21, 1901.

A. J. PFLAUM, attorney for appellant.

FELSENTHAL & FOREMAN, attorneys for appellees.

MR. PRESIDING JUSTICE WINDES delivered the opinion of the court.

Appellees, some of whom are owners and others lessees of certain premises on the west side of State street near Monroe street, Chicago, known as numbers 172 and 178 State street, the latter being improved by a five-story stone and brick building and the former by a building which has a basement and upper stories, though the kind of structure is not shown. No. 178 is used by tenants of certain of the appellees, who are in the millinery business, and No. 172 is occupied by the appellee Grossman & Company, a corporation, engaged in the business of selling cloaks, suits, wraps and kindred articles of merchandise.

State street at this point is a very busy street and during business hours is continually thronged and greatly congested with foot passengers and vehicles of all kinds in both the roadways and sidewalks. The sidewalk in front of the premises owned and occupied by appellees as well as

appellant is twenty feet in width, and the street, including the sidewalks from Madison street, which is one block north from Monroe street, extending south for many miles, is of a uniform width of 100 feet.

Nos. 174 and 176 State street, being the premises between said Nos. 172 and 178, have a frontage on State street of forty feet, are improved by a five-story stone and brick building, are owned by one Ayer and leased to certain persons who, in turn, lease to the appellant company, which occupies the first and ground floor of said building, the lease terminating on April 30, 1907.

The above described premises, including other property along the west side of State street and south of Monroe street, were included in a plat known as the school section addition to Chicago, made by the trustees of schools as owners, which was recorded August 4, 1846. This plat shows Monroe street to be sixty-six feet in width and State street one hundred feet in width, and the titles to the premises owned and occupied by appellees and appellant have passed by a series of *mesne* conveyances from the trustees of schools as a common source, to the present owners and occupants, the west line of State street having all that time remained unchanged of record.

By common consent of all the owners and tenants of the buildings now standing upon all the above mentioned premises, the front or show windows thereof have been constructed so as to extend eighteen inches beyond the east line of the lots as originally laid out and shown upon said plat, to the height of the first story of said buildings, and so that said front or show windows encroach upon the sidewalk space in State street in front of said premises eighteen inches. The front or face of all said buildings above the height of the first story is now and always has been along the east line of the lots as originally laid out by the school trustees.

On or about the first day of July, 1901, the city council of Chicago passed an ordinance which by its terms gave permission to the appellant company to construct and main-

John Anisfield Co. v. Edward B. Grossman & Co.

tain a bay-window in connection with the building at said numbers 174 and 176 State street, which should extend along the entire front of said building, except the space left open for an entrance, and "in width a distance of eighteen inches over the sidewalk adjoining said building," and providing for a payment of $55 annually to the city of Chicago for said privilege, and that the same should cease absolutely at the expiration of ten years from the date of the ordinance, and at any time upon the order of the mayor of said city.

Pursuant to this ordinance and a permit granted by the city of Chicago, the appellant company proceeded to construct the bay-window therein provided for, for its sole private benefit, and thereupon appellees filed their bill against appellant, alleging, among other things, the matters hereinabove set out; also that said premises have become of exceeding great value, and that their rental value depends to a very large extent upon the amount of room afforded for display or show of merchandise; that "every inch of space upon said street where said premises are located is of great value, and that everything which tends to deprive the tenants or occupants conducting business in said premises of the opportunity for the display of their merchandise, and everything which tends to shut out the view of the front of said premises and to interfere, to any extent, with the sunshine, light, air and warmth which said premises have hitherto enjoyed by reason of the width of said street, and by reason of the fact that no projection of any kind was extended, or does extend, beyond the front of said premises, will cause serious and continuing damages and injury to your orators and their said property, and that such damages will amount to many thousands of dollars and will be beyond legal remedy or relief if not prevented by this court;" also that any encroachment whatever upon the sidewalk space in front of appellee's premises is a "serious menace to all of the people, and a special cause of damage and injury to owners, occupants and tenants of premises immediately contiguous

to such encroachment;" also "that the maintenance of the unobstructed view and the right to the unobstructed access of light, warmth and sunshine to all of the front of said premises is of special pecuniary value, and that any obstruction which tends to diminish the sunshine, warmth and light of said premises by the defendants, as hereinafter mentioned, would be of great and irreparable damage to your orators' property;" that the said structure proposed to be erected by appellant company will "obstruct the free access of light, ventilation, sunshine and warmth, and display of merchandise, to which your orators, all of the complainants herein, and their tenants, are entitled, and will greatly interfere with and obstruct the view of the premises of your orators from pedestrians and others who might become customers of your orators' tenants, and of your orator, Edward B. Grossman & Co., and will cause pecuniary loss and damage to your orators, and specially tend to depreciate the value of your orators' premises, and will, moreover, tend still further to obstruct and impede all persons who may be passing along said State street, and tend greatly to increase the crowding of such persons, whereby the public will suffer great annoyance, inconvenience and danger."

The bill prays for an injunction to prevent the erection of the proposed structure and from creating any obstruction upon the sidewalk to the east of the present line of the front of the said buildings, and from in anywise molesting or impairing the rights, privileges and easements of appellees, and of the public at large, to light, air and free access with reference to appellee's premises. An application for an injunction was made to the chancellor, on notice to appellant upon the bill, which was sworn to, and a hearing was had upon the bill and certain affidavits filed by appellant in opposition to the motion.

The affidavits show, in substance, that the bay-window proposed to be erected by the appellant company would be entirely of transparent plate glass, riveted together by screws and without any perpendicular iron or steel support

John Anisfield Co. v. Edward B. Grossman & Co.

for the same, and that part of it which would project eighteen inches from appellant's building would be two feet and six inches from the north line of the building and ten feet and six inches north of the premises, No. 178 State street; also that the appellee, Grossman & Co., has erected and displays a show case four feet in length and two feet in depth on the sidewalk in front of its premises, which extends over the sidewalk a distance of three feet; that there is erected and maintained in front of the premises No. 178 State street, a large hanging electrical sign, made of wood and metal, which is not transparent, and is used for advertising purposes, extending over the sidewalk a distance of twelve feet; that the usage and custom for many years among merchants occupying premises on State street has been to erect and maintain bay-window fronts, storm-door fronts, overhead and hanging signs, projecting over the sidewalk different distances, viz., six inches, eighteen inches, three feet, and even six feet. The affidavits set out numerous instances of such obstructions upon and over the sidewalks by different persons not parties to the bill, along State street within one, two and three blocks of the premises in question. Two of the affiants also express the opinion that the proposed structure will not interfere with or prevent the appellees from the enjoyment of their premises; will not shut out the view in front of the same, will not interfere with the sunshine, light and air which appellee's premises have hitherto enjoyed, and will not be a substantial or material obstruction to the street, and will not cause any damage to appellees or their premises. It appears from the affidavit of an employe of the city clerk's office of the city of Chicago, that he has examined the laws and ordinances passed by the city, and that at no time has permission, consent or authority been granted by the city of Chicago for the maintenance of store fronts on the premises, Nos. 172 to 178 State street, both numbers inclusive, extending eighteen inches over the sidewalk, except the ordinance of July 1, 1901, herein above mentioned.

The chancellor, after the hearing aforesaid, granted an

injunction until the further order of the court, in substance as prayed by the bill, to reverse which this appeal is taken.

First, it is claimed that appellees are debarred from any relief because they have not come into equity with clean hands. We think the contention is untenable under the facts of this case.

The maxim of equity that he who seeks equity must come with clean hands, only applies to the particular transaction under consideration by the court.

"The wrong must have been done to the defendant himself and must have been in regard to the matter in litigation." 1 Pomeroy's Eq. Juris., Secs. 387, 399; Bispham's Eq., 61, 62; Kadish v. Garden City L. Assn., 151 Ill. 531; City of Chicago v. Stk. Yds. Co., 164 Ill. 224–238, and cases cited.

It appears, in substance, from the facts above stated, that by common consent of the owners and tenants of property along the west side of State street, near and including the premises of appellant and appellees, the store fronts, as to the first story of the buildings, were so constructed as to extend over the lot line and on to the sidewalk eighteen inches. Whatever wrong there is in this regard, appellant and appellees are equally in the wrong, but no question arises in this case on that point. That appellees have caused obstructions on and over the sidewalk, the one by a showcase projecting five feet, and the other by an electrical sign projecting over the sidewalk twelve feet, may also be wrong, but these matters are not in litigation in this case, are wholly disconnected with the matter here in question, and are, moreover, temporary in their nature. We think, under the authorities cited, the equitable maxim here invoked by the appellant has no application. The cases cited and relied upon by appellant in this connection are, we think, clearly distinguishable from the case at bar. We deem it unnecessary to refer to them in detail.

Next, and finally, it is claimed that the proposed bay-window will not be a substantial obstruction to the sidewalk, and therefore not a nuisance; that equity will not

John Anisfield Co. v. Edward B. Grossman & Co.

interfere by injunction with the construction of a nuisance, unless a strong case of imperative necessity is shown, and the nuisance must be in derogation of rights long previously enjoyed.

The facts hereinabove set out show that the proposed structure will be a substantial obstruction to the sidewalk, and for the sole private benefit of appellant. It is unnecessary here to repeat them. A mere statement of the undisputed fact, viz., that during business hours the sidewalk in front of these premises is constantly thronged by great numbers of people, and that for a distance of about twenty-eight feet in length by eighteen inches in width, this structure is to be used by appellant, and prevents any use of that part of the sidewalk by the public, demonstrates that it is a substantial and material obstruction thereon, for the sole use of appellant. In order to justify the relief sought in this case, we think it is not necessary, to use the language of appellant's counsel, that "a strong case of imperative necessity" should be shown, but only that the complainants be shown to have a special interest in the matter, and will suffer a special injury, different from that sustained by the public, if the injunction is not issued. High on Inj., Sec. 816; Elliott on Roads and Streets, 497; Cihak v. Klekr, 117 Ill. 643–53; Smith v. McDowell, 148 Ill. 51–64; Canal Co. v. Garrity, 115 Ill. 155–67; Pa. Co. v. City, 181 Ill. 289–96; Field v. Barling, 149 Ill. 565; Dill v. Board of E., 10 L. R. A, 281.

In the Garrity case, *supra*, which was a bill to enjoin the laying of railway tracks in a public street in Chicago, the court said that it was unquestionable law that the use of the streets "must be for the public, and that no corporation or individual can acquire an exclusive right to their use or the use of any part of them for private purposes," and held that the permission to lay the railway tracks there in question could be allowed in the public streets because of the public benefit—not in the interest of private persons.

In the Smith case, *supra*, in which it was attempted by ordinance to vacate a strip in a street of the village of Chats-

worth, five feet wide and eighty-five feet long, it was held that a municipal corporation *held* and *controlled* its streets in trust for the use of the general public, without the power of converting or appropriating them to a private use; and that where an ordinance by its terms proposed to " destroy the public right and use of a part of the street for the sole purpose of enabling a private person to occupy a portion of that street by a permanent structure appurtenant to his building, abutting upon the street," it was void.   The court also held that because the structure in that case was permanent in its nature, it was a purpresture and *per se* a public nuisance which the village authorities had no power to license or maintain, and that the matter of inconvenience to the public, or that sufficient of the street remained unobstructed to still accommodate the public travel, did not change its character from that of a public nuisance, and could not be considered.

In the Cihak case, *supra*, where the question was as to the protection of the owner in his right to an easement in an alley, the court held that it was not necessary for it to be shown more than that such easement was " highly convenient and beneficial " to him in the use of his property.

In the Field case, *supra*, where a property owner on Holden Place, a narrow street in Chicago, sought to enjoin the construction of an overhead bridge or passage-way connecting two buildings on opposite sides of the street, the doctrine of both the Smith and Garrity cases, *supra*, is reaffirmed, and the court held, among other things, that the abutting lot owner had the right to have the light and air pass unobstructed across the open space between the surface of the street and the sky, notwithstanding the city of Chicago had passed an ordinance authorizing the construction of the bridge or passageway sought to be enjoined.

In the Pennsylvania case, *supra*, the court say :

" The city has no power or authority to grant the exclusive use of its streets to any private person or for any private purposes, but must hold and control the possession exclusively for public use, for purposes of travel and the like."

This structure proposed to be erected by appellant, being substantial and permanent in its nature, the city being without power or authority to permit it, it being clearly an obstruction to the public travel, as well as an obstruction to appellees' light and to the prospect to and from their property, and the allegations of fact in the bill being sufficient to show that appellees' easement of light and prospect would not only be convenient and beneficial to their property, but that the deprivation thereof and the obstruction of the sidewalk by reason of the construction of appellant's proposed bay-window would cause them material and irreparable damage, we are of opinion that the injunction was properly issued, and the order, therefore, is affirmed.